**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

JP MORGAN CHASE BANK, N.A.,

       Plaintiff,

v.

FIRST AMERICAN TITLE INSURANCE
COMPANY,

       Defendant.

Case No. 09-14891

HON. MARIANNE O. BATTANI

Consolidated with,

FIRST AMERICAN TITLE INSURANCE
COMPANY,

       Plaintiff,

v.

JP MORGAN CHASE BANK, N.A.,

       Defendant.

_____/

Case No. 09-14915

HON. MARIANNE O. BATTANI

**OPINION AND ORDER GRANTING FIRST AMERICAN TITLE INSURANCE COMPANY'S MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS**

**I.    INTRODUCTION**

Before the Court are First American Title Insurance Company's ("First American") Motion for Partial Judgment on the Pleadings, (doc. 16), and the Federal Deposit Insurance Corporation / Receiver's ("FDIC") Motion to Intervene, (doc. 25). As stated

on the record at hearing held on June 9, 2010, the Court **GRANTS** the FDIC's Motion to Intervene . In First American's Motion for Partial Judgment on the Pleadings, it asks for judgment in its favor on Counts 1 and 2 of its complaint against Chase. For the reasons that follow, the Court **GRANTS** First American's motion.

II.     **STATEMENT OF FACTS**

First American is in the business of underwriting policies of title insurance for property owners and mortgage lenders. Patriot Title Agency LLC ("Patriot Title") was an agent authorized to issue title policies underwritten by First American. In 2008 it became apparent to First American that Patriot Title, via its principal officer Randy Saylor, was involved in various fraudulent real estate and mortgage loan transactions. One of these fraudulent transactions involved the property that is the subject of the present dispute — an 11,000 square foot home located in Grosse Ile Township, Michigan (the "Property").

In September of 2007, Saylor and other coconspirators sought to fraudulently obtain a mortgage loan involving the Property from Washington Mutual Bank ("WaMu") on behalf of an individual named Ha Truong. The application falsely stated that Truong had an income of $250,000 per month. WaMu subsequently approved the loan application in the principal amount of $4.5 Million. In connection with this transaction, Saylor, acting on behalf of Patriot Title and, by extension, First American, issued a title insurance policy ("the Title Policy") in the principal amount of $4.5 Million to WaMu.

The parties agree that the terms of the Title Policy are contained within the ATLA Loan Policy 06-17-06 document.

As a result of the various fraudulent acts perpetrated by Saylor, WaMu did not obtain an effective mortgage lien on the Property. Truong subsequently failed to make his loan payments. In order to remedy the apparent title defects, First American acquired title and possession of the Property in 2008. Thereafter, federal regulators closed WaMu and the insured mortgage was assigned to J.P. Morgan Chase Bank ("Chase"). First American subsequently sought to convey the Property to Chase in order to extinguish any possible claims that could be brought under the Title Policy. Chase refused to accept the Property, maintaining that it was entitled to monetary damages.

On December 16, 2009, First American filed suit in the Wayne County Circuit Court seeking a declaration that it had fulfilled its obligations under the Title Policy, and redress for Chase's alleged breach of contract. Chase, in turn, filed an action in this Court the next day against First American for breach of contract, fraud, and misrepresentation. Chase also sought declaratory relief as to First American's obligations under the Title Policy. Chase removed First American's state court action to this Court, and the two actions were consolidated.

### III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(c) allows a party to move for a judgment on the pleadings after the pleadings are closed, but early enough not to delay trial. In reviewing such a motion, "all well-pleaded material allegations of the pleadings of the

opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." JPMorgan Chase Bank, N.A. v. Winget, 510 F.3d 577, 581 (6th Cir. 2007) (citation omitted). Accordingly, "[a] Rule 12(c) motion is granted when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." Id. (quotation omitted).

## IV.   ANALYSIS

This case turns on whether First American can satisfy its obligations under the Title Policy by conveying title to the Property to Chase. As an initial matter, the Title Policy never explicitly indicates that First American can satisfy its obligations by conveying title to Chase. The Title Policy does, however, contain a limitation of liability provision that states:

> If [First American] establishes the Title, or removes the alleged defect, lien, or encumbrance . . . , all as insured, in a reasonably diligent manner by any method . . . it shall have fully performed its obligations with respect to that matter and shall not be liable for any loss or damage caused to the Insured.

Accordingly, if conveying title to the Property to Chase either "establishes the Title, or removes the alleged defect lien or encumbrance," then by conveying the title to the Property to Chase, First American can fully satisfy its obligations under the Title Policy.

Chase argues that this Court should follow Citicorp Sav. of Ill. v. Stewart Title Guar. Co. ("Citicorp"), 840 F.2d 526 (7th Cir. 1988), which addressed a very similar title policy and held that the title insurer could not satisfy its obligations by tendering the deed to the property. First American argues, however, that Citicorp was wrongly

4

decided and that this Court should follow First Fed. Sav. and Loan Assoc. v. Transamerica Title Ins. Co. ("First Federal"), 19 F.3d 528 (10th Cir. 1994).

In Citicorp, the Seventh Circuit Court of Appeals concluded that a title insurer could not satisfy its obligations by tendering title to the lender. 840 F.2d at 531. In that case, Charles Robinson financed the purchase of a piece of property through the execution of a mortgage on the property. Id. at 527-28. The mortgage was assigned to Citicorp and a title insurance policy was issued. Id. at 528. Citicorp subsequently learned that Robinson had been adjudicated incompetent 26 years before the purchase of the property, which rendered the mortgage voidable by Robinson's guardian. Id. at 528-29. Accordingly, the court found that Citicorp was entitled to damages because it had relied upon the title policy's "guarantee that the lien is valid" in extending credit to Robinson. Id. at 529-30.

The court then determined that the title insurer could not cure this defect by tendering the property title to Citicorp. Id. at 531. In arriving at this conclusion, the court first noted that the title policy never stated that the insurer could tender the property's deed in lieu of damages. Id. at 530. The court also observed that the policy's "Determination and Payment of Loss" provision was drafted solely in monetary terms, which implied that "damages are not payable in real estate[.]" Id. Furthermore, the loss to Citicorp was fixed when Citicorp extended credit to Robinson, and it was inappropriate for Citicorp, as opposed to the title insurer, to "bear any risk of market value decline in the property after that time." Id. Based on this, the court concluded "that the parties could not have intended tender of the real estate to be an acceptable substitute for damages." Id.

The <u>Citicorp</u> court then turned to determine whether tendering the deed "established the lien of the insured mortgage, as insured," as the title policy called for in its limitation of liability provision. <u>Id.</u> The court first noted that the "insured mortgage" was defined in the title policy as Citicorp's mortgage on Robinson's interest in the property. Furthermore, the lien was unenforceable by Citicorp at the mortgage's inception and "no action by Stewart Title could have established the mortgage lien as insured." <u>Id.</u> at 531. The court went on,

> It is one thing to say that the policy allows [the title insurer] to correct defects in a lien's priority. It is quite another to contend that [the title insurer] may 'correct' a voidable mortgage, which the mortgagee would never have entered had it been informed of the voidability, by tendering a deed to the property years later. Tender does not remove the fact that no money would have changed hands but for [the title insurer's] mistake.

<u>Id.</u> According to the court, the title insurer could have drafted the policy to permit tender of the deed to cure such a defect, but it did not. <u>Id.</u> Therefore, the court granted judgment to Citicorp for the amount of money that Citicorp had tendered to Robinson in the mortgage transaction. <u>Id.</u>

A dissent to the <u>Citicorp</u> decision concluded that the title insurer had established the lien of the insured mortgage, as was required of it by the title policy's limitation of liability provision, by tendering the deed to Citicorp. <u>Id.</u> at 534. According to the dissent, the title insurer "ensured that Citicorp retained the legal right it was entitled to under a legally enforceable mortgage (i.e., the right to foreclose)." <u>Id.</u>

In <u>First Federal</u>, the Tenth Circuit criticized the reasoning of <u>Citicorp</u> because it "ignores the nature of title insurance." 19 F.3d at 530. The court described the nature of title insurance as follows:

> Title insurance is merely a contract to indemnify the insured for any losses incurred as a result of later found defects in title. Title insurance does not insure the value of the subject property; it insures only that the title to such property is unencumbered by unknown liens, easements, and the like which might affect the property's value. In other words, a title insurance policy is not analogous to a warranty of title found in a deed which is breached, if at all, at the time it is made.

Id. The Court went on to conclude that the title insurer satisfied the plain meaning of the title policy's limitation of liability provision by having the Property's title transferred to the insured, which "establish[ed] the title." Id. at 531.

As an initial matter, the Court agrees with First Federal's conclusion that Citicorp mistakenly treated title insurance as a guarantee of title. See Gibraltar Sav. v. Commonwealth Land Title Ins. Co., 905 F.2d 1203, 1205 (8th Cir. 1990) ("'A title policy is a contract of indemnity, not of guaranty,' and provides reimbursement for actual loss only. A title insurance policy provides for indemnity 'only to the extent that [the insured's] security is impaired and to the extent of the resulting loss that it sustains.'" (quoting Diversified Mortgage Investors v. U.S. Life Ins. Co., 544 F.2d 571, 574 n.2 (2d Cir. 1976)); Mid-South Title Ins. Corp. v. Resolution Trust Corp., 840 F. Supp. 522, 527 (W.D. Tenn. 1993) (citing Falmouth Nat. Bank v. Ticor Title Ins. Co., 920 F.2d 1058, 1062 (1st Cir. 1990)); see also Focus Inv. Assocs., Inc. v. American Title Ins. Co., 992 F.2d 1231, 1236-37 (1st Cir. 1993). Accordingly, to the extent that Citicorp relied upon treating the title insurance policy as a guaranty, and not as a contract of indemnity, the decision was not well-founded.

Regarding whether tendering the title satisfies the Title Policy's limitation of liability provision, the Court again finds First Federal persuasive. In this case, title never properly vested — and, thus, Chase did not obtain its lien interest in the Property —

7

because the purchase of the Property by Truong was a sham. In such a situation, the Court finds that tendering full title to the Property to the Insured "establishes the Title" under the Title Policy's Limitation of Liability Provision.

Chase argues that "Title" must be established in accordance with the definition of the term "Title" in the Title Policy; the Title Policy defines Title as vesting in Truong, with Chase possessing a mortgage lien on the Property. The Court does not find, however, that in a situation such as this — where the purchase of the property was a sham and the purported purchaser has failed to satisfy their mortgage payment obligations — that the Limitation of Liability provision of the Title Policy requires that the title be vested in Truoung with a mortgage interest to Chase. As such, the Court finds that by tendering the title to the Property to Chase, First American established the title; thereby fully performing its obligations under the Title Policy.

## V. CONCLUSION

Accordingly, Plaintiff's Motion for Partial Judgment on the Pleadings is **GRANTED.**

**IT IS SO ORDERED.**

                                          s/Marianne O. Battani
                                          MARIANNE O. BATTANI
                                          UNITED STATES DISTRICT JUDGE

DATED: July 8, 2010

## CERTIFICATE OF SERVICE

Copies of this Order were served upon counsel of record on this date by ordinary mail and electronic filing.

                                                    s/Bernadette M. Thebolt
                                                    Case Manager